IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   13-cv-03217-MJW

RHONDA R. TRUJILLO,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

---

## OPINION AND ORDER

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

The government determined that Rhonda Trujillo is not disabled for purposes of Supplemental Security Income.  Trujillo has asked this Court either to reverse that decision or to remand for further hearing.

The Court has jurisdiction under 42 U.S.C. § 1383(c)(3).  Both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c).  The Court AFFIRMS the government's determination.

## Factual Background

Trujillo has a congenital growth on her right leg that has required several surgeries and skin grafts over the course of her life.  The condition and its treatment have left her right leg weak and painful.  She also has heel spurs, a degenerative disc condition of the spine, and fibromyalgia.  Moreover, she has an affective disorder causing depression.  Trujillo has not worked for any meaningful span of time at any point that the record in this case reveals, going back over fifteen years.

2

Trujillo applied for disability, and her case has now been heard twice by an administrative law judge ("ALJ").  For the first hearing, the ALJ received 82 pages of medical records, including a physical evaluation from Dr. Troy Glaser; mental evaluations from three doctors; and medical records from the Colorado Department of Corrections and St. Mary-Corwin Hospital.  The ALJ issued an adverse decision in June 2010.  However, there were patent legal errors in the decision; when Trujillo pointed those out in this Court, the government voluntarily asked for a remand.

The ALJ held a second hearing in February 2013.  He collected a further 213 pages of medical records.  As relevant here, these records include treatment records for various physical ailments and documents from Kim Carpenter, a Licensed Clinical Social Worker who treated Trujillo for her mental health issues.  The ALJ also took testimony from another mental-health expert, Dr. Robert Pelc.  In March 2013, the ALJ issued a second adverse decision.  Applying the government's five-step analysis, he determined that although Trujillo suffers from severe limitations, those limitations nonetheless allow her to perform work that exists in significant numbers in the national economy.  The key issues on appeal concern the ALJ's findings as to Trujillo's ability to work.  He found that she could:

> perform light work as defined in 20 CFR 416.967(b) except the claimant can stand and walk for [only] 2 hours per day; requires a sit/stand option; can occasionally bend and squat, but never kneel; cannot use foot or leg controls; and is limited to the performance of unskilled work, with an svp of 2 or less, involving only simple, rote, repetitive tasks; can tolerate occasional work related interaction with coworkers, but no face-to-face interaction with the general public, and minimal supervision.

(AR 266).

3

**Analysis**

The Court reviews the ALJ's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied.  *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007).  "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."  *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted).  The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).  The Court cannot reweigh the evidence or its credibility.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Trujillo presents several overlapping arguments for reversal, all of which boil down to whether the ALJ appropriately (or inappropriately) deferred to the judgments of others.  She argues that the ALJ failed to defer to Dr. Pelc, Ms. Carpenter, Dr. Glaser, and inappropriately deferred to the State agency disability examiner.

**I.      The Commissioner's Authority to Determine Functional Limitations**

The Social Security Administration applies a five-step process for determining disability.  The first three steps attempt to rule the claimant disabled or not disabled through comparatively unambiguous tests.  If those steps fail to resolve the question, the government makes an assessment of the functional limitations imposed by the claimant's impairments—coming to a conclusion of the claimant's residual functional capacity ("RFC").  Once that RFC assessment is made, the government proceeds to the

4

fourth and fifth steps of analysis: whether, with that RFC, the claimant can perform his

or her past jobs; and if not, whether the claimant can perform other jobs that are

available.  *See* 20 C.F.R. § 416.920(a)(4).

The RFC assessment is "a function-by-function assessment based upon all of

the relevant evidence of an individual's ability to do work-related activities."  Security

Ruling 96–8p, 61 Fed. Reg. 34,474, 34,476 (July 2, 1996).  This function-by-function

assessment is "reserved to the Commissioner," *see* 20 C.F.R. § 416.927(d), meaning

that the law sees a distinction between the government's ultimate RFC conclusions and

the opinions of medical professionals:

> The term "residual functional capacity assessment" describes an
> adjudicator's finding about the ability of an individual to perform work-
> related activities.  The assessment is based upon consideration of all
> relevant evidence in the case record, including medical evidence and
> relevant nonmedical evidence, such as observations of lay witnesses of
> an individual's apparent symptomatology, an individual's own statement of
> what he or she is able or unable to do, and many other factors that could
> help the adjudicator determine the most reasonable findings in light of all
> the evidence.
>
> . . .
>
> A medical source's statement about what an individual can still do is
> medical opinion evidence that an adjudicator must consider together with
> all of the other relevant evidence (including other medical source
> statements that may be in the case record) when assessing an individual's
> RFC.  Although an adjudicator may decide to adopt all of the opinions
> expressed in a medical source statement, a medical source statement
> must not be equated with the administrative finding known as the RFC
> assessment.

Social Security Ruling 96-5p, 61 Fed. Reg. 34,471, 34,473–74 (July 2, 1996).

In making the RFC assessment, "there is no requirement in the regulations for a

direct correspondence between an RFC finding and a specific medical opinion on the

5

functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

Indeed, an ALJ may make determinations as to specific limitations in the RFC without

having any opinion evidence at all on the question. *Id.* at 1288–89 (citing *Wall v.

Astrue*, 561 F.3d 1048, 1068–69 (10th Cir. 2009); *Howard v. Barnhart*, 379 F.3d 945,

949 (10th Cir. 2004); and *Bernal v. Bowen*, 851 F.2d 297, 302–03 (10th Cir. 1988)).

That said, the government's findings as to the functional limitations to be included

in the RFC assessment must still be supported by substantial evidence.  *See, e.g.*, *Wall

v. Astrue*, 561 F.3d 1048, 1068–69 (10th Cir. 2009).  Moreover, opinion evidence

meeting the legal definition of a "medical opinion" is subject to special treatment.  20

C.F.R. § 416.927; Social Security Ruling 96–8p, 61 Fed. Reg. at 34,479 ("The RFC

assessment must always consider and address medical source opinions.  If the RFC

assessment conflicts with an opinion from a medical source, the adjudicator must

explain why the opinion was not adopted.").  And the Tenth Circuit takes medical

opinions seriously.  Most medical opinions offer a conclusion as to more than one

functional limitation.  Where that happens, the RFC assessment must resolve each

such limitation—either adopting it, reconciling it with conflicting evidence, or explicitly

declining to adopt it for specific reasons.  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th

Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical

opinion, taking only the parts that are favorable to a finding of nondisability."); *Clifton v.

Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the

ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of

evidence.  Rather, in addition to discussing the evidence supporting his decision, the

6

ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." (internal citation omitted)).

## II.   <u>Opinion of Dr. Pelc</u>

Dr. Pelc's testimony proceeded in two steps.  First, in response to the ALJ's questions, Dr. Pelc offered general conclusions based on his review of the evidence:

> [Trujillo has] limitations principally in two areas.  One is in terms of marked limitation regarding detailed or complex information processing. . . .  The other limitation that I believe would be supported by this record is an inability to deal with usual work routines and changes in routine work environments . . . .

(AR 287).  Dr. Pelc explained that first limitation was established by evidence Dr. Richard Madsen's and Dr. Glaser's observations of limited cognitive functioning, while the second limitation was established by Dr. Madsen's and Ms. Carpenter's reports of mood swings and poor mood regulation (AR 287–88).

Second, after offering those broad conclusions, Dr. Pelc provided greater detail when questioned by Trujillo's attorney.  Specifically, Dr. Pelc walked through Section 1 of a Form SSA-4734-F4-SUP.  The SSA-4734-F4-SUP is used to translate medical opinions into formal RFC assessments.  *See* Program Operations Manual System (POMS), DI 24510.060 to .065 (*available at* https://secure.ssa.gov/apps10/poms.nsf/subchapterlist!openview&restricttocategory=04245) (explaining Form SSA-4734-F4-SUP).  The Form has three sections: Section I is a "summary conclusions" checklist asking the consultant to opine on the claimant's limitations as to twenty specific mental activities, in four broad categories; Section II is a "remarks" section asking the consultant to comment on the sufficiency of the evidence; Section III is a "functional

capacity assessment" asking the consultant to form an RFC assessment in a narrative format. *Id.* The twenty mental abilities in Section I are broken into four broad categories: "Understanding and Memory"; "Sustained Concentration and Persistence"; "Social Interaction"; and "Adaptation." *Id.* Here, Dr. Pelc walked through all twenty specific mental abilities. He found a moderate limitation ("the evidence supports the conclusion that the individual's capacity to perform the activity is impaired") in fifteen of them, and a marked limitation ("the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity") in the other five (AR 289–91).

In weighing this testimony, the ALJ discussed the broad conclusions offered by Dr. Pelc's testimony, without most of the more specific testimony:

> Medical Expert Robert Pelc, M.D. testified as an expert in psychiatry. Dr. Pelc testified that the claimant's mental impairments did not meet or equal a Listing. However he did feel that the claimant's mental symptoms resulted in marked limitations in the ability to follow complex or detailed instructions, but was capable of processing simple information, following simple instructions, perform simple, repetitive tasks. However, he also opined that the claimant had an inability to deal with usual work routines and usual work changes. The undersigned gives this opinion moderate weight. The opinion was rendered after a thorough review of the medical evidence. His opinion as to the claimant's inability to perform complex or skilled work activity is generally consistent with the claimant's mental status exam findings and treatment history. However, the endorsed inability to deal with routine work changes is not well supported by the record. Dr. Madsen indicated that the claimant's mood swings and lability supported this limitation. However, while the record does support some degree of mood lability, it does not appear severe enough to totally preclude adaptation to usual work changes. While this mood lability justifies some social limitations, there is little reason to suppose that they would preclude her ability to adapt to routine changes in an unskilled work setting with limited social interaction as found above. Therefore, the undersigned gives Dr. Pelc's opinion only moderate weight."

8

(AR 271).  Trujillo argues that the ALJ erred both by disagreeing with one of Dr. Pelc's

two broad conclusions, and also by failing to discuss Dr. Pelc's proffered limitations as

to the twenty specific mental activities.

The Court disagrees.  On the first point, Trujillo contends that the ALJ improperly

"substituted his lay assessment of the medical evidence for the opinions of Dr. Pelc"

when he found that her mood lability "does not appear severe enough to totally preclude

adaptation to usual work changes" (Document 15, p. 18).  This argument fails because

the actual functional limitations that comprise an RFC assessment are issues reserved

to the Commissioner.  The ALJ is required to weigh and discuss Dr. Pelc's opinion as to

functional limitations—but he is not required to adopt it.  He is required only to give

reasons, supported by substantial evidence, for the parts of it he disagrees with it.  He

did so here, and his opinion is therefore unimpeachable by this Court.

In an effort to reach a different outcome, Trujillo cites *Winfrey v. Chater*, 92 F.3d

1017 (10th Cir. 1996), and *Thomas v. Barnhart*, 147 F. App'x 755 (10th Cir. 2005).

Neither case applies here.  In *Winfrey*, the ALJ found a medical diagnosis of a

somatoform disorder to be improperly based on the wrong tests; the Tenth Circuit held

that the ALJ "clearly overstepped his bounds when he substituted his medical judgment"

for that of the examiner.  *Winfrey*, 92 F.3d at 1022.  Likewise, in *Thomas*, the ALJ

rejected a diagnosis of major depressive disorder because it was based solely on the

claimant's statements; again, the Tenth Circuit found the ALJ overstepped his bounds.

*Thomas*, 147 F. App'x at 759–60.  Here, by contrast, the ALJ did not second-guess any

medical diagnosis.  He passed judgment on the vocational limitations created by the

diagnosed impairments—and that is what an ALJ is supposed to do.

On the second point, Trujillo argues that the ALJ was required to address all of

the limitations from Dr. Pelc's testimony on the Form SSA-4734-F4-SUP.  The Tenth

Circuit has rejected this argument in an analogous context.  In *Sullivan v. Colvin*, 519 F.

App'x 985 (10th Cir. 2013), the ALJ considered a Form SSA-4734-F4-SUP in which a

doctor provided opinions both in Section I (the twenty specific mental abilities) and also

in Section III (the narrative RFC assessment).  *Id.* at 988–89.  The Tenth Circuit held

that the ALJ did not err by specifically addressing only the narrative assessment; the

ALJ was required to *consider* the more detailed part of the opinion, but not necessarily

*discuss* it.  *Id.* (citing *Clifton*, 79 F.3d at 1009-10).  Here, by analogy, the ALJ was

required to consider all of Dr. Pelc's testimony and to discuss Dr. Pelc's narrative

conclusions as to Trujillo's functional capacity.  He did so.

This would be a different case if Dr. Pelc's broader conclusions, or the ALJ's

discussion of it, did not encompass the more specific testimony.  But, although the

Tenth Circuit requires an ALJ to account for all limitations offered in a medical opinion,

*Haga*, 482 F.3d at 1208, it is often acceptable for the ALJ to do so at a higher level of

generality than the medical opinion used.  *See, e.g.*, *Martinez v. Colvin*, Docket No. 12-

cv-03239-CMA, 2014 WL 788788, at *3 (D. Colo. Feb. 26, 2014) (finding no error when

RFC analysis adopted broad limitations impliedly including specific limitations).   And

when an ALJ leaves out the specific limitations from Section I of Form SSA-4734-F4-

SUP while discussing the narrative Section III opinion, this Court finds error only when

10

the Section I opinions are inconsistent with the Section III limitations.  *See Baysinger v. Astrue*, Docket No. 11-cv-00333-WYD, 2012 WL 1044746, at *5–6 (D. Colo. Mar. 28, 2012) (comparing cases).

Here, Trujillo highlights only one part of Dr. Pelc's opinion that she feels the ALJ should have addressed in more detail, and it is a limitation that is fairly encompassed within the ALJ's discussion.  Specifically, Dr. Pelc stated that Trujillo is "markedly limited" as to the eleventh item on the checklist: "The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest period" (AR 290).  This item falls under the broader category of "Sustained Concentration and Persistence" abilities.  *See* Form SSA-4734-F4-SUP.  It is therefore included in the portion of Dr. Pelc's opinion that the ALJ adopted: "that the claimant's mental symptoms resulted in marked limitations in the ability to follow complex or detailed instructions, but was capable of processing simple information, following simple instructions, perform simple, repetitive tasks" (AR 271).  And corresponding limitations were included in the RFC analysis: the ALJ found that Trujillo's impairment limited her to "unskilled work, with an svp of 2 or less, involving only simple, rote, repetitive tasks" (AR 266).  The specific limitation in question is not inconsistent with Dr. Pelc's broader, more considered testimony; thus, the ALJ did not err by discussing it at a more general level.

## III.   Opinion of Ms. Carpenter

Trujillo has sought mental-health treatment at a clinic named Aspen Pointe, where she was treated by Ms. Carpenter.  The ALJ received records from Aspen Pointe

and an opinion from and Ms. Carpenter, submitted on a version of the Form SSA-4734-F4-SUP (AR 436–52). The version of the form that Ms. Carpenter filled out asked for some background information about her treatment relationship with Trujillo; a brief description of her diagnoses and the facts supporting them; the twenty specific mental abilities from the regular form; and four additional questions aimed at broader conclusions about Trujillo's ability to work (AR 436–38). Ms. Carpenter opined that Trujillo was slightly to moderately limited in all twenty mental abilities (using a five-point scale rather than the four-point scale shown on the regular Form SSA-4734-F4-SUP), and ultimately that Trujillo could not work a regular workweek or stay on task more than half the time (*Id.*).

    The ALJ did not give much weight to Ms. Carpenter's opinion:

> On June 28, 2012 Kim Carpenter, LPC, completed a form indicating that the claimant had moderate limitations in most areas of mental functioning, and was unable to work a 40 hour workweek. Exh. B14F, pp. 1-3. Pursuant to SSR 06-03p, the undersigned gives this opinion little weight. Although she is not an acceptable medical source, Ms. Carpenter is nevertheless a treating medical source. However, she only saw the claimant a handful of times for a few months in 2012. Therefore, she does not have a very long or involved treatment relationship with the claimant that would ordinarily justify deference to a treating source's opinion. In addition, her opinion is very poorly explained and contains basically no rationale. The opinion is not consistent with the claimant's mental status exam findings or treatment history as described above. Therefore, the undersigned gives this opinion little weight."

(AR 270–71). Trujillo argues that the ALJ erred because all three grounds for discounting the opinion are invalid.

    The Court disagrees. As Trujillo correctly notes, the first stated ground—that Ms. Carpenter had a limited treatment relationship with Trujillo—is among the grounds that

12

an ALJ should consider, but is not alone dispositive of the weight due an opinion.  20

C.F.R. § 416.927(c).  Trujillo cites *Chapo*, 682 F.3d at 1291, for the position that the

ALJ's opinion is therefore reversible.  In *Chapo*, however, the ALJ relied *only* on that

one factor, and failed to apply any other analysis under 20 C.F.R. § 416.927(c).  682

F.3d at 1291.  This is a different case.  The ALJ considered not only the examining and

treating relationship under 20 C.F.R. § 416.927(c)(1)–(2), but also the supportability of

the opinion under subsection (c)(3) and its consistency with the record as a whole under

(c)(4).  The ALJ need not address each and every factor, nor even explicitly reference

the factors; rather, the ALJ need only be "sufficiently specific to make clear to any

subsequent reviewers" the weight given an opinion and the reasons for that weight.

*Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).  The ALJ did so here.

Trujillo also argues that the ALJ was wrong in concluding that the opinion was

poorly explained and inconsistent with the rest of the record.  The Court, however, is not

allowed to re-weigh the evidence.  *Lax*, 489 F.3d at 1084.  The ALJ's finding on each

point is supported by substantial evidence and cannot be disturbed here.

**IV.   Opinion of Dr. Glaser**

Dr. Glaser examined Trujillo and reviewed her prison medical records (AR 191–

95).  After doing so, he offered the following functional assessment:

> The number of hours that the claimant could be expected to stand and
> walk in an eight-hour day is less than two hours at this point in time
> because you can see that she has pain in the left leg.  It appears that she
> almost has bone on bone and not much support on the medial aspect of
> her right knee because of the surgery from [the growth on her right leg].
>
> The number of hours that the claimant could be expected to sit in an eight-
> hour workday is unrestricted.

An assistive device may be medically necessary for long distances or uneven terrain.

The amount of weight that the claimant could lift and carry both frequently and occasionally is unrestricted with the upper body.  With her poor balance she should be able to carry 25 pounds frequently and occasionally a little bit more than that, but if she had to do that more frequently then she may fall due to her inhibition from pain in her right leg.

Postural limitations of bending, stooping, or crouching are not limited as long as she does these occasionally, but she might be set up for falling because of the pain inhibition in her right knee.

There are no manipulative limitations.

There are no relevant visual, communicative, or workplace environmental limitations.

(AR 195–96).  The ALJ's RFC analysis reflects most of these limitations, and indeed

relies in part on Dr. Glaser's opinion (*see* AR 266–67 (citing Exhibit B3F, pp. 4-6)).  The

ALJ, however, rejected Dr. Glaser's opinion as to whether Trujillo was limited in her

ability to lift and carry heavy objects and whether she was able to stand for *up to*

(instead of *less than*) two hours in a day (AR 270).  In rejecting those portions of Dr.

Glaser's opinion, the ALJ stated:

Consultative examiner Troy Glaser, M.D. opined that the claimant was able to lift 50 pounds occasionally and 25 pounds frequently; stand and walk for less than 2 out of 8 hours; sit for 6 out of 8 hours; and could frequently engage in postural activities.  Exh. B3F, p. 5.  The undersigned gives this opinion little weight.  The opinion was rendered after a single examination of the claimant.  The opinion does not appear very consistent with those exam findings or the exam findings of other providers, as detailed above.  The opinion is not explained in much detail and is somewhat vague.  For example, Dr. Glaser indicates that he claimant can stand and walk for "less than" 2 hours a day, but never states how many hours or minutes the claimant would be capable of.  In any event, these limitations do not appear consistent with the claimant's treatment history, which demonstrates that, for all her alleged difficulties walking and standing, the claimant does not use an assistive device.  Overall, the

> opinion is poorly explained and inconsistent with the record as a whole.
> Therefore, the undersigned gives this opinion little weight

(AR 270).  Trujillo argues that, as to her ability to stand for up to two hours per day, the

ALJ's reasons for discounting Dr. Glaser's opinion are invalid.

Each of Trujillo's arguments is mistaken.  She first argues that, because the ALJ

adopted most of the rest of Dr. Glaser's opinion, it must be true that Dr. Glaser's opinion

is consistent with the record as a whole—and therefore the ALJ must be wrong about

this specific portion of Dr. Glaser's opinion being *in*consistent with the record.  But an

ALJ is not required to adopt every single portion of an opinion.  Rather, the ALJ must

give sufficient reasons for uncontradicted portions that he rejects.  *Haga*, 482 F.3d at

1208.  Here, the ALJ had already detailed how the medical records supported his

decision—for example, examining sources consistently found good muscle strength and

range of motion in Trujillo's extremities, and her treatment history revealed no home

treatment or assistive devices (AR 267–68).  The ALJ found those records to be in

conflict with Dr. Glaser's opinion that Trujillo could stand for less than two hours per

day—and it is the ALJ's job, not this Court's, to resolve that conflict.

Relatedly, Trujillo argues that the ALJ failed to explain why he gave two portions

of Dr. Glaser's opinion little weight in the March 2013 determination—whereas, before

the remand, the ALJ gave "[t]his well supported assessment" "significant weight"

(*compare* AR 270 *with* AR 14).  An ALJ, on remand, is not bound by the agency's earlier

decision.  *Campbell v. Bowen*, 822 F.2d 1518, 1521–22 (10th Cir. 1987).  That said,

when an ALJ weighs the same evidence differently, without explanation, it suggests that

the ALJ's opinion might be arbitrary.  *See Hamlin v. Barnhart*, 365 F.3d 1208, 1224

(10th Cir. 2004).  Here, although the ALJ did not explicitly reference his earlier opinion,

his reasoning is plain.  The ALJ states in the March 2013 decision that Dr. Glaser's

opinion is inconsistent with the record—and the record in March 2013 was considerably

larger, with considerably more detail, than it was in June 2010.  In June 2010, the

record as to Trujillo's physical impairments consisted of twenty pages of records from

the Department of Corrections, Dr. Glaser's own examination, and fifteen pages of

records from St. Mary-Corwin Hospital.  In March 2013, the record included those same

exhibits—plus 141 additional pages of records from four new sources.  There is nothing

inconsistent or arbitrary about describing Dr. Glaser's overall opinion as well-supported

in June 2010, and then describing two narrow portions of it as contrary to the record as

a whole in March 2013.

## V.    State Agency SDM

Trujillo makes one other argument.  The ALJ's first decision gave significant

weight to a State agency single decisionmaker ("SDM") (AR 17), even though an SDM's

determination is not considered evidence, *Lopez v. Astrue*, 805 F.Supp.2d 1081, 1092

(D.Colo. 2011).  The ALJ's RFC analysis did not change much between his two

decisions—suggesting that the second decision also relied inappropriately on the SDM,

albeit *sub silentio*.  The Court disagrees, for the reasons well-stated in the government's

brief (*see* Docket No. 16, pp. 18–19).

The ALJ cited third-party medical records in explaining his RFC analysis.  For

example, the ALJ identified evidentiary support for his findings that Trujillo has

"limitations in the ability to lift and carry heavy objects, stand and walk for extended

16

periods of time, use foot controls, or engage in postural activities on a constant basis"
(AR 267); the cited records do, indeed, provide support for those findings.  Those
findings are therefore supported by substantial evidence and cannot be disturbed by
this Court.

As the government further points out, there are significant differences between
the SDM's conclusions and the ALJ's RFC analyses.  While the ALJ may have given
inappropriate weight to the SDM's conclusions in his first analysis, that weight was not
dispositive—the ALJ also gave weight to Dr. Glaser (AR 14) and added his own
conclusions from the medical records (*see* AR 14–16).  As a result, that RFC analysis
bore only slight resemblance to the SDM's conclusions (*compare* AR 13, *with* AR 222–
29).  Upon remand, the physical RFC analysis ended up largely the same—and bore no
greater resemblance to the SDM's conclusions.  Accordingly, the Court sees no reason
to conclude that the ALJ *sub silentio* relied on the SDM.

## Conclusion

For the reasons set forth above, the Commissioner's decision is AFFIRMED.


Dated this 22nd day of September, 2014.

BY THE COURT:


/s/ Michael J. Watanabe
MICHAEL J. WATANABE
United States Magistrate Judge